**UNITED  STATES  DISTRICT  COURT**

**SOUTHERN  DISTRICT  OF  GEORGIA**

**SAVANNAH  DIVISION**

| | | |
|---|---|---|
| JIMMY L. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CV419-236 |
| BRIAN P. KEMP, *et al.*, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, plaintiff Jimmy L. Taylor has filed a 42 U.S.C. § 1983 complaint for four hundred and ninety-six million dollars against each of the twenty-six named defendants.  Doc. 1 at 5-6.  The Court now screens his Complaint under 28 U.S.C. § 1915(e), which requires the immediate dismissal of any complaint brought *in forma pauperis* that is frivolous or malicious, fails to state at least one actionable claim against a governmental entity or official, or seeks monetary relief against a defendant who is immune from such relief.

## BACKGROUND

The root of plaintiff's claims is an April 11, 2018 arrest and search conducted by Sgt. Greg Pennycuff and Deputy Robillard which resulted

in plaintiff being detained, and later incarcerated and placed on house arrest. Doc. 1 at 2-3. While plaintiff's 110-page complaint is rather wide-ranging extensive, various facts are sprinkled throughout. According to the police report (recited by plaintiff), it appears that a friend of a Ms. Annette Johnson—Connie Potter—contacted the police regarding plaintiff. *Id.* at 12-13. Ms. Potter was concerned that plaintiff was fraudulently holding himself out as a medical doctor and receiving payment for scam treatments rendered to Ms. Johnson. *Id.* at 13. The police report stated that plaintiff was due to arrive at Ms. Johnson's home around 11:30. *Id.* Ultimately, plaintiff was arrested, his property was searched, and he was charged and convicted of at least one crime. He claims that his charges were based on "hearsay, and evidence acquired through illegal search and seizure." *Id.* at 3. Plaintiff has thus far spent a period of time incarcerated and another period of time under house arrest during which he was fitted with electronic monitoring. *Id.* While he alleges that five of six claims against him have been dismissed, he

acknowledges that at least one remains ongoing. *Id.* at 9. Plaintiff brings

the following claims against the various defendants in this case.[1]

1. Plaintiff sues Governor Brian Kemp in his official capacity because he is "responsible for the governance and actions brought against the Plaintiff by Sgt. Greg Pennycuff and the State of Georgia." Doc. 1 at 10-11.

2. He sues the State of Georgia for the same reason. *Id.* at 11-12.

3. He sues Captain Jon Holland for failing to supervise and train Sgt. Pennycuff. *Id. at* 13.

4. He sues Connie Potter (again under § 1983) for bringing false, fraudulent, slanderous, deceitful and malicious allegations against the plaintiff. *Id.* at 17.

5. He sues Sgt. Pennycuff for failing to read him his rights under *Miranda*, *id.* at 21; illegally searching his vehicle, *id.*; violating his rights under the Fourth Amendment, *id.*; violating his rights under the Fifth and Sixth Amendments, *id.* at 22-24; violating his rights under the Eighth Amendment, *id.* at 24; violating his rights under the Fourteenth Amendment, *id.*; violating his rights under the Georgia Constitution, *id.* at 25; violating his rights under 18 U.S.C. §§ 241 and 242 by engaging in a conspiracy, doc. 1 at 25-26, 34-35, 42-50.

6. He sues Deputy Robillard for attending the allegedly illegal search and therefore engaging in a conspiracy with Sgt. Pennycuff. *Id.* at 27-31.

---

[1] Unless otherwise noted, plaintiff brings these claims pursuant to 42 U.S.C. § 1983. The Court notes that a number of motions have been filed prior to screening including a Motion to Compel the Court to Issue Summons, doc. 13, a Motion to Dismiss, doc. 15, a Motion to Stay, doc. 16, a Motion for Defendant to Comply with Court Order, doc. 24, a Motion for Court to Serve, doc. 30, and a Motion to Compel, doc. 34. Insofar as these motions are premature as they were filed prior to screening they should be **DISMISSED AS MOOT**. To the extent any party who is served desires to refile the motions, they may do so during the applicable response time after being served or returning waivers of service.

7. He sues Houston County, Georgia Sheriff Talton because he is "responsible" for Sgt. Pennycuff and for failing to "follow up" on the charges. *Id.* at 31-32

8. He sues the Houston County Detention center for failing to assure that Sgt. Pennycuff acted in accordance with the governing laws of the State of Georgia. *Id.* at 36.

9. He sues the Houston County Sheriff's department for failing to supervise Sgt. Pennycuff. *Id.* at 39.

10. He sues Sheriff McDuffee for failing to supervise Sgt. Pennycuff's search of plaintiff's property. *Id.* at 50-51.

11. He sues Captain Rick Daily for the same reason. *Id.* at 53-55.

12. He sues Effingham County Sheriff's Department for the same reason. *Id.* at 55-59.

13. He sues Rincon City police Chief Mark Gerbino for the same reason. *Id.* at 59-61.

14. He sues Rincon City Police Department for the same reason. *Id.* at 62-65.

15. He sues Lt. Colonel Jason Johnson for participating in the alleged illegal search. *Id.* at 66.

16. He sues Georgia State Patrol as the employing body of Lt. Colonel Jason Johnson. *Id.* at 68-72.

17. He sues Vic Reynolds, Director of the Georgia Bureau of Investigation for the participation of certain GBI officers in the search of his home. *Id.* at 72-75.

18. He sues the GBI as the employer of various GBI agents who participated in the search of his home. *Id.* at 75-78.

19. He sues Bradley Kimball for violating his Fourth Amendment rights by fitting him with an electronic monitor. *Id.* at 79-81.

20. He sues CSRA Probation, Inc., Bradley Kimball's employer, for the same reason. *Id.* at 81-85.

21. He sues Michael Popplewell, CEO of CSRA Probation, Inc. for the same reason. *Id.* at 86-88.

22. He sues John Doe Global Positioning for monitoring him through the electronic monitoring system. *Id.* at 88-91.

23. He sues PA George Hartwig, prosecuting attorney for Houston County for malicious prosecution. *Id.* at 91-92

24. He sues Erikka Williams for the same reason. *Id.* at 92-94.

25. He sues Southern Correctional Medicine for "becoming party" to his arrest by processing him after he was arrested. *Id.* at 94-96.

26. He sues the United States of America, the Food and Drug Administration, and SA Jessica Owens for processing items found during the search of plaintiff's property. *Id.* at 99-103.

## ANALYSIS

As an initial matter, many of plaintiff's claims cannot proceed against the named defendants. Plaintiff has sued prosecutors George Hartwig and Erikka Williams for their role in prosecuting him. They are absolutely immune from § 1983 liability where their alleged malfeasance stemmed entirely from their "function as an advocate." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) ("[A]bsolute immunity extends to a prosecutor's 'acts undertaken . . .in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State. . . . ' "), *see Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."); *Jackson v. Capraun*, 534 F. App'x 854, 859 (11th Cir. 2013) (prosecutor

entitled to absolute immunity for initiating prosecution even if he did so with malicious intent).  Accordingly, the claims against George Hartwig and Erikka Williams should be **DISMISSED**.

Likewise, plaintiff's claims against Sheriff Talton, Sheriff McDuffie, Captain Daily, Mark Gerbino,[2] Vic Reynolds, Jason Jordan,[3] and Michael Popplewell appear to depend solely on their obligations as supervisors.  However, they cannot be sued because § 1983 claims require an allegation of a causal connection between a defendant's acts or omissions and the alleged constitutional deprivation.[4]  *See Zalter v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)("Section 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation.").  Such claims cannot be based upon theories of *respondeat superior* or vicarious

---

[2] Plaintiff does allege that Captain Daily and Chief Gerbino participated in an illegal search of his home, but he does not provide any factual assertion supporting his allegation that the search was illegal nor does he allege that Daily or Gerbino was aware of anything which would make the search illegal.  His focus is purely on whether these individuals appropriately supervised Sgt. Pennycuff.

[3] The Court notes that this defendant is referenced as both Jason Jordan and Jason Johnson. For purposes of this Order the Court will use the name Jason Jordan.

[4] Although plaintiff does not name each of these individuals in their official capacities, his claim would still fail.

liability. *Polk Cty. v. Dodson*, 454 U.S. 312, 325; *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Taylor's complaint does not include any allegations that these individuals had personal knowledge of the various violations he asserts. Accordingly, plaintiff's complaint fails to state a claim. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim upon which relief can be granted.) Moreover, their positions as supervisors do not support claims against them in their official capacity either. *See Cambell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) ("As a supervisory official, Sheriff Johnson is only liable under § 1983 for the unconstitutional acts of his subordinates if he personally participated in the allegedly unconstitutional conduct, or his actions were causally connected to the alleged constitutional deprivation.").

To the extent plaintiff seeks to hold these individuals responsible for their failure to train, he has not properly alleged a claim. In order to prevail on a failure-to-train claim, plaintiff must establish that the supervisors have a policy of failing to train or supervise employees and

that this policy caused their employees to violate his constitutional rights. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (discussing municipal liability in the context of a failure to train or supervise claim); *see West v. Tillman*, 496 F.3d 1321, 1331 n. 16 (11th Cir. 2007) (citing *Gold* in the context of a failure-to-trail claim directly targeting specific supervisors). Absent any express written or oral policy encouraging the violation of plaintiff's rights (which plaintiff has not alleged), he is required to plead facts demonstrating that the supervisors' failure to train amounted to deliberate indifference to plaintiff's rights. *See Gold*, 151 F.3d at 1350 ("[T]here are only 'limited circumstances' in which an allegation of a failure to train or supervise can be the basis for liability under § 1983.")(citations omitted); *see also Battiste v. Sheriff of Broward Cnty.*, 261 F. App'x 199, 202 (11th Cir. 2008) (per curiam) ("A supervisory official is liable under § 1983 when 'his failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact; and the failure has actually caused the injury of which the plaintiff complains.'" (*quoting Belcher v. City of Foley, Ala.,* 30 F.3d 1390, 1397 (11th Cir. 1994))).

Plaintiff can meet this standard by showing that "the need for more or different training is obvious, such as when there exists *a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, and when the failure to train is likely to result in the violation of a constitutional right.*"   *Belcher*, 30 F.3d at 1397-98 (discussing failure to train claims at the summary judgment level)(internal citations omitted)(emphasis added).   Alternatively, he may do so "in a narrow range of circumstances" where there is no pattern of violations, but the failure to train was *obvious* and led to the "highly predictable" violation of plaintiff's constitutional rights. *Connick v. Thompson*, 563 U.S. 51, 64 (2011).   At the worst, plaintiff alleges that he suffered some allegedly unconstitutional actions at the hands of individual police officers.   Thus, his allegations do not meet the standards necessary to hold the individual supervisors liable.   Thus, the claims against Sheriff Talton, Sheriff McDuffie, Captain Daily, Mark Gerbino, Vic Reynolds, Jason Jordan, and Michael Popplewell should be **DISMISSED**.

Likewise, the various police departments and sheriff's offices that plaintiff sues are not entities subject to suit under § 1983.   *Lovelace v.*

*DeKalb Cent. Prob.*, 144 F. App'x 793, 795 (11th Cir. 2005) (county police department not a legal entity subject to suit under § 1983); *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (sheriff and police departments are not considered legal entities subject to suit), *cited by Bunyon v. Burke Cty.*, 285 F. Supp. 2d 1310, 1328 (S.D. Ga. 2003).  To the extent Taylor believes that the departments are responsible as the various officers' employers, claims against local governments, government officials, or supervisors brought pursuant to § 1983 cannot be based upon theories of *respondeat superior* or vicarious liability.  *See Polk, supra* p. 7.  That is, a governmental entity cannot be held liable just because it employs a tortfeasor.  As a result, any claims against Houston County Sheriff's Office, Effingham County Sheriff's Office, Rincon City Police Department, Georgia State Patrol, and the GBI, should be **DISMISSED**.

Furthermore, Governor Kemp and the State of Georgia enjoy immunity under the Eleventh Amendment.[5]  "The Eleventh Amendment insulates a state from suit brought by individuals in federal court unless

---

[5] While this defense may be waived, the Court notes that these defendants appeared and raised the issue of immunity in a motion to dismiss, doc. 15, to which plaintiff responded, doc. 21.

the state either consents to suit or waives its Eleventh Amendment immunity." *Stevens v. Gay*, 864 F.2d 113, 114 (11th Cir. 1989).  Even if they were not immune, the State is not subject to suit under § 1983.  *See Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) ("A state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable.") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989)).  Accordingly, plaintiff's claims against Governor Kemp in his official capacity and the State of Georgia should be **DISMISSED**.

Moreover, private individuals are not subject to suit under § 1983. As a result, plaintiff's claims against Connie Potter (at least as far as federal claims exist) fail.  *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003), cited in *Stringer v. Doe*, 503, F. App'x 88, 890-91 (11th Cir. 2013) (§1983 complaint brought against sheriff, deputies, diving center employees, and Doe defendants following altercation at campsite and in diving center failed to state a claim against any of the defendants, warranting *sua sponte* dismissal; Doe defendants and dive show employees were non-state actors who did not commit any acts under color of state law); *Sutherland v. Chisolm*,

2013 WL 709823 at * 3 (S.D. Ga. Feb. 13, 2013).  As a result, the claims against Connie Potter should be **DISMISSED**.

Plaintiff also sues John Doe Global Positioning, Bradley Kimball, Captain Holland, Southern Correctional Medicine, CSRA Probation, Inc., the United States of America, the Food and Drug Administration, and SA Jessica Owens.[6]  Generally speaking, he alleges that each of these individuals or entities engaged in some action after his arrest that makes them responsible for any constitutional violations that occurred *even in the absence actual knowledge of the violation*.  Plaintiff attempts to hold these individuals responsible by alleging that they engaged in a widespread conspiracy to deny him certain constitutional rights.  While it is possible to proceed with a conspiracy claim under § 1983, plaintiff simply does not allege facts sufficient to allow such claims to proceed.

> A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right.  *GJR Invs., Inc. v. County of Escambia,* 132 F.3d 1359, 1370 (11th Cir.1998).  "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights.  The conspiratorial acts must impinge upon the federal right; the

---

[6] Nothing in this Order should be read to suggest that with more specific pleading of the conspiracy portion of plaintiff's arguments, these claims could proceed.  Many of these entities (for example, the United States of America), may have other defenses (for example, sovereign immunity) which would preclude plaintiff from proceeding against them.

> plaintiff must prove an actionable wrong to support the conspiracy." *Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir.1990) (citations omitted).  A plaintiff claiming a § 1983 conspiracy must prove the defendants "reached an understanding" to violate the plaintiff's constitutional rights. *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.,* 956 F.2d 1112, 1122 (11th Cir.1992) ("[T]he linchpin for conspiracy is agreement.").  Factual proof of the existence of a § 1983 conspiracy may be based on circumstantial evidence. *Burrell v. Bd. of Trs. of Ga. Military Coll.,* 970 F.2d 785, 789 (11th Cir.1992).

*Grider v. City of Auburn, Ala.,* 618 F.3d 1240, 1260 (11th Cir. 2010).

Plaintiff's problem is that he never alleges that these entities came to an agreement to violate plaintiff's rights at any point along the way.  He merely alleges that they engaged in certain activities during the course of his prosecution *and therefore became responsible for the alleged constitutional violations of others.*  This is simply insufficient. Accordingly, any claims against John Doe Global Positioning, Bradley Kimball, Captain Holland, Southern Correctional Medicine, CSRA Probation, Inc., the United States of America, the Food and Drug Administration, and SA Jessica Owens should be **DISMISSED**.

Having disposed of most of the defendants plaintiff seeks to sue, two remain; Sgt. Pennycuff, and Deputy Robillard.  These were the two officers involved in his initial arrest and search.  Liberally construing

plaintiff's case against these individuals, he brings claims for violations of the Fourth Amendment during his stop and arrest, violations of the Fifth and Sixth Amendments during the course of his arrest, false arrest, malicious prosecution, and false imprisonment.

It is unclear to the Court what precise Fourth Amendment violations plaintiff alleges. Turning to the initial approach of officers to plaintiff, the fact that Sgt. Pennycuff approached plaintiff's stopped car is not a constitutional violation as officers require no level of suspicion in order to approach a parked vehicle and ask its occupants some basic questions.[7] *See, e.g., Muhler v. Mena*, 544 U.S 93, 101 (2005) (quoting *Florida v. Bostic*, 501 U.S. 429, 434-35 (1991) ("We have 'held repeatedly that mere police questioning does not constitute a seizure,' " and " '[e]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her' " belongings); *Terry v. Ohio*, 392 U.S. 1, 33 (1968) (White, J. concurring)

---

[7] Plaintiff makes no argument that police came onto his own property to speak to him—to the extent he even alleges that police came onto private property—thus there is no Fourth Amendment violation based on coming onto *someone else's* private property. *Rakas v. Illinois*, 439 U.S. 128, 133-35 (1978) ("Fourth Amendment rights are personal rights," and one who claims prejudice only because a search or seizure produced damaging evidence lacks a sufficient personal interest, often referred to as "standing.").

("There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets."); *United States v. Espinosa-Guerra*, 805 F.2d 1502, 1506 (11th Cir. 1986) (citing *United States v. Berry,* 670 F.2d 583 (5th Cir. 1982) (en banc) (noting that "police-citizen communications involving no coercion or detention" do "not implicate fourth amendment scrutiny.").)

Thus, the Court turns to whether the allegedly warrantless arrest, search, and seizure of plaintiff and vehicle were constitutional.  The Fourth Amendment establishes the constitutional right for individuals to be free from unreasonable searches and seizures.  However, "[t]he Fourth Amendment's prohibition of warrantless searches, [] is not absolute." *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002).  Plaintiff seems to allege that his arrest after the initial contact was not based on probable cause.  Specifically, that all he was doing when he was arrested was sitting in his car.  Insofar as plaintiff also alleges that the informant who provided information on his potentially illegal medical treatments was incorrect and unreliable, it is *possible* that he states a claim under the Fourth Amendment for an arrest without probable cause. *See, e.g., Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) ("In determining

whether an informant's tip rises to the level of probable cause, we assess the totality of the circumstances. We consider the relevance of factors such as the informant's veracity, reliability, and basis of knowledge. In addition, the corroboration of the details of an informant's tip through independent police work adds significant value to the probable cause analysis.") (citations and quotations omitted).  Since it appears that the search of his vehicle was based on his arrest, if the arrest lacked probable cause the search would violate the Fourth Amendment. Thus, granting plaintiff the benefit of his *pro se* status, the Court concludes that he has adequately pled a claim for Fourth Amendment violations at least as to the search of his car.  Plaintiff does not, however, allege adequate facts to support his claims regarding any other search of his property.  Not only does the Court not know what other property was searched, plaintiff does not even attempt to argue whether there was or was not a warrant. In fact, it appears that there was likely a warrant for this search.[8]

---

[8] Generally speaking, a search is reasonable when conducted pursuant to a warrant or other court authorization or when qualifying for an established exception.  *United States v. Prevo*, 435 F.3d 1346, 1346 (11th Cir. 2006).  Nevertheless, even when authorized, a search which exceeds the scope of the authorization can violate the Fourth Amendment.  *Cf. Horton v. California*, 496 U.S. 128, 140 (1990) ("If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more.").  Plaintiff makes some vague allegations about whether the warrant was validly issued, alleging that Sgt. Pennycuff used fruits of his initially illegal search to seek a warrant for plaintiff's

Plaintiff however, fails to state a claim for violations of his Fifth Amendment rights against self-incrimination. Plaintiff alleges that the officers failed to read him his *Miranda* rights before questioning him regarding his allegedly illicit activities, failed to provide him with counsel when requested, and tried to get him to waive his Fifth Amendment rights. However, the safeguards of *Miranda* are "not themselves protected by the Constitution but . . . [are] measures to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker*, 417 U.S. 433, 444 (1974). "Statements compelled by police interrogations of course may not be used against a defendant at trial, see *Brown v. Mississippi*, 297 U.S. 278, 286 (1936), but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs." *Chavez v. Martinez*, 538 U.S. 760, 767 (2003); *citing United States v. Verdugo-Urguidez*, 494 U.S. 259, 264 (1990) ("The privilege against self-incrimination guaranteed by the Fifth Amendment is a *fundamental trial right* of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, *a*

residence. However, given the vague nature of his initial complaint regarding the search of his vehicle along with the lack of detail surrounding the warrant issued for his property. Plaintiff may, if he believes the facts warrant it, attempt to amend his complaint.

*constitutional violation occurs only at trial*" (emphasis in original); *Withrow v. Williams*, 507 U.S. 680, 692 (1993) (describing the Fifth Amendment as a "trial right")).  Thus, absent any allegations that plaintiff's statements were used against him at trial, there was no violation of the right.  *See Chavez*, 538 U.S at 766 ("We fail to see how, based on the text of the Fifth Amendment, Martinez can allege a violation of this right, since Martinez was never prosecuted for a crime, let alone compelled to be a witness against himself in a criminal case.")  Accordingly, any claims plaintiff seeks to bring for violations of his Fifth Amendment rights should be **DISMISSED**.

The same is true for his rights under the Sixth Amendment. "The Sixth Amendment right of the accused to assistance of counsel in 'all criminal prosecutions' is limited by its terms: 'it does not attach until a prosecution is commenced.'"  *Rothgery v. Gillespie Cty., Tex.,* 554 U.S. 191, 198 (2008) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (citing *Moran v. Burbine*, 475 U.S. 412, 430 (1986).  This is considered to be "at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothergy*, 554 U.S. at 194 (citing *Brewer v. Williams*, 430

U.S. 387, 398-99 (1977); *Michgan v. Jackson*, 475 U.S. 625, n. 3 (1986)). Here, there is no allegation that plaintiff was deprived of counsel when or after he first appeared before a judicial officer.  Therefore, his Sixth Amendment right to counsel claims should be **DISMISSED**.

Plaintiff also fails to state a claim for false arrest or false imprisonment.  A claim for false arrest derives from the constitutional right to be free from "unreasonable searches and seizures."  U.S. CONST. AMEND. IV.  A warrantless arrest made without probable cause violates the Fourth Amendment and forms the basis of a § 1983 claim for damages.  *Ortega*, 85 F.3d at 1525; *Max v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990); *Von Stein v. Bresher*, 904 F.2d 572, 578 (11th Cir. 1990).  In a case of continuing detention (as here), however, "false imprisonment ends once the victim becomes held pursuant to [legal] process – when, for example, he is bound over by a magistrate or arraigned on charges."  *Wallace v. Kato*, 549 U.S. 384, 389-90 (2009). Once an arrestee's unlawful detention becomes a product of legal process, his continued custody may still be unlawful, but any damages suffered after that point must be recovered under the "entirely distinct" tort of malicious prosecution, "which remedies detention accompanied not by

the absence of legal process, but by *wrongful institution* of legal process."
*Id.* at 390.  In other words, the torts of malicious prosecution and false
imprisonment are distinct, and the former supplants the latter after legal
process is initiated.

The Eleventh Circuit "has identified malicious prosecution as a
violation of the Fourth Amendment and a viable constitutional tort
cognizable under § 1983." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir.
2003).  An essential element of a malicious prosecution claim, however,
is the termination of the criminal prosecution in the plaintiff's favor.  *Id.*
at 882.  In the case at bar, there is no allegation that the case against
plaintiff (in its entirety) has been resolved in his favor.  In fact, he
appears to assert that he was sentenced and served a term of
imprisonment.  Accordingly, plaintiff does not state a claim for malicious
prosecution and any such claim against the defendants should be
**DISMISSED**.

## CONCLUSION

Accordingly, plaintiff's claims against all defendants except Sgt.
Pennycuff and Deputy Robillard as well as his claims for violations of his
Fifth Amendment rights against self-incrimination, Sixth Amendment

rights to counsel, and Fourth Amendment rights against false-imprisonment and malicious prosecution in their entirety should be **DISMISSED**. However, his claims for violations of the Fourth Amendment against Deputy Robillard and Sgt. Pennycuff related to illegal search and seizure survive preliminary review. The Clerk is **DIRECTED** to forward a copy of this Order, along with plaintiff's Complaint, to the Marshal for service upon Deputy Robillard and Sgt. Pennycuff. *See* Fed R. Civ. P. 4(c)(3) (requiring the court to order service by the United States Marshal for plaintiffs "authorized to proceed in forma pauperis under 28 U.S.C. § 1915)

This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. §636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. §636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 11th day of August, 2020.

Christopher L. Ray
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA