IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JIMMY L. TAYLOR, <br><br> Plaintiff, <br><br> v. <br><br> SGT. GREG PENNYCUFF; and <br> DEP. TRAVIS ROBILLARD, <br><br> Defendants. | CIVIL ACTION NO.: 4:19-cv-236 |

**O R D E R**

Plaintiff Jimmy L. Taylor, proceeding *pro se* and *in forma pauperis*, alleges Defendants Sgt. Greg Pennycuff and Dep. Travis Robillard violated his Fourth Amendment rights when they conducted a search of his vehicle and arrested him on April 11, 2018. (See doc. 51.) Defendants have moved for summary judgment as to the claim against them. (Doc. 87.) For the reasons explained below, the Court **GRANTS** Defendants' Motion for Summary Judgment. (Id.)

**BACKGROUND**

**I.     Procedural Background**

This 42 U.S.C. § 1983 action arises out of a 2018 investigation by the Houston County Sheriff's Office into allegations that Plaintiff provided unlicensed medical treatment to Annette Johnson. (See doc. 87-2.) Plaintiff initially named twenty-six Defendants and sought $96 million in damages. At the screening stage, the Court dismissed all claims and Defendants except the sole remaining claim that Sgt. Greg Pennycuff and Dep. Travis Robillard of the Houston County Sheriff's Office violated Plaintiff's Fourth Amendment rights by searching his vehicle and arresting him without probable cause. (Doc. 36, p. 15.) Plaintiff filed an amended complaint on

October 1, 2020. (Doc. 51.) Defendants moved for summary judgment on March 18, 2021. (Doc. 87.) Plaintiff filed four response briefs, (docs. 92, 96, 103, 110), large portions of which are redundant. (Compare doc. 92 with doc. 96 with doc. 103, pp. 50–57.) Defendants filed two replies. (Docs. 95, 109.) One of Plaintiff's response briefs is fifty-nine pages long, well over the twenty-six page limit allowed by Local Rule 7.6.

In accordance with Local Rule 56.1, Defendants submitted a Statement of Material Facts and Conclusions of Law along with two interrogatories, (docs. 87-5, 87-9), and five exhibits including dash camera footage, (docs. 87-3, 87-6 to 87-8). Plaintiff did not file a response to the statement. Nor did he submit any evidence or exhibits supporting the factual assertions in his briefs. The Court deems admitted all portions of Defendants' statements having evidentiary support in, and not otherwise contradicted by, the record and which are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56.[1] See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849–50 (11th Cir. 2011) (*per curiam*) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (same). Defendants continue to shoulder the burden of demonstrating the absence of any genuine issue of material fact, and the Court will review the entire record "to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009).

---

[1] Pursuant to Federal Rule of Civil Procedure 56, a party disputing a fact must cite "to particular parts of materials in the record," and any affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1) & (4).

II.     **Factual Background**

Connie Potter, the fiancée of Annette Johnson's son, called the Houston County Sheriff's Office in April 2018 and told Captain John Holland that Plaintiff had no Georgia medical license yet for some time had been treating Ms. Johnson for cancer in her big toe. (Doc. 87-2, pp. 2–3; doc. 87-5, pp. 9–11.) Acting on this tip, Sgt. Greg Pennycuff visited Ms. Johnson in the hospital on the morning of April 11, 2018. (Doc. 87-2, p. 3.)

Ms. Johnson explained she reached out to Plaintiff for treatment in 2017. (Doc. 87-5, p. 10.) Plaintiff told Ms. Johnson he was a physician specializing in stem cell research who earned his medical degree in Puerto Rico and operated a stem cell research and therapy clinic in Cancun, Mexico. (Id.) Beginning in May 2017, Plaintiff visited Ms. Johnson at her home every two weeks and brought with him stem cell medication in prepackaged syringes, which Ms. Johnson received by nebulizer. (Id.) Plaintiff supervised the treatment and provided Ms. Johnson with instructions, and he also administered pain medication. (Id.) Ms. Johnson paid Plaintiff approximately $1,500 per visit, making the checks payable to him, which Plaintiff would initial "JT." (Id.) The total paid to Plaintiff was approximately $33,000. (Id.) Ms. Johnson's statements were consistent with Ms. Potter's tip. (See id. at 9-12.) Plaintiff does not contest most of these facts in his response briefs and instead merely contends Ms. Johnson administered the treatments herself during their visits, and he only provided instructions, medications, and equipment. (See doc. 103, pp. 26, 53–55; doc. 110, p. 3.)

During the hospital interview, Ms. Johnson told Sgt. Pennycuff that Plaintiff was scheduled to make his next medical visit that same day at noon, and Sgt. Pennycuff drove to Ms. Johnson's residence to wait for Plaintiff.[2] (Doc. 87-2, p. 4.) At 1:35 pm, Plaintiff arrived in a truck and

---

[2] Plaintiff accuses Ms. Johnson of tricking him into making a visit that day by inviting him through text message. (See, e.g., doc. 1, pp. 17, 27, 43; doc. 51, pp. 15, 22; doc. 103, pp. 28–35, 53–54.) Plaintiff characterizes this as entrapment. The argument fails because this unsworn allegation does not create an

3

parked in the driveway. (Id. at p. 5.) Sgt. Pennycuff approached the truck, and, presumably upon request, Plaintiff produced his driver's license. (Id.) In response to Sgt. Pennycuff's questions, Plaintiff explained he was there to administer stem cell therapy to Ms. Johnson and handed Sgt. Pennycuff a bag marked "Annette Johnson" containing twelve syringes of yellow liquid. (Id.; doc. 87-5, p. 12.) Sgt. Pennycuff asked whether Plaintiff was a licensed physician certified to practice in Georgia and the United States, and Plaintiff stated he was but his credentials were at his office. (Doc. 87-5, p. 12.) Sgt. Pennycuff continued to question Plaintiff, who remained seated in the truck, concerning his education and medical practice. (Id.) When Sgt. Pennycuff asked a second time, Plaintiff admitted he was not licensed in Georgia or the United States but was licensed in Mexico. (Id. at pp. 12–13.) Plaintiff contended he was not practicing medicine because he merely delivered medication to Ms. Johnson, who administered it herself. (Id. at p. 13; doc. 103, p. 26.) Sgt. Pennycuff disagreed with this legal argument. (Doc. 87-5, p. 12; doc. 103, p. 26; doc. 110, p. 3.)

Dep. Travis Robillard then arrived to assist Sgt. Pennycuff, and his dash camera recorded the rest of the encounter. (See doc. 87-7 ("DC"); doc. 87-2, p. 5.) Sgt. Pennycuff ended his conversation with Plaintiff, updated Dep. Robillard on the situation, called the District Attorney's office from his patrol car, and returned to Plaintiff to ask for permission to search the truck. (DC 02:28–13:58.) Plaintiff's response is unintelligible but, within a few seconds, Plaintiff stepped out of the vehicle and was directed where to stand as Sgt. Pennycuff conducted a search. (Id. at 13:59–14:06.) In sworn interrogatory responses, Defendants aver Plaintiff verbally consented to a vehicle search. (Doc. 87-5, p. 12; doc. 87-9, p. 9.) In unsworn statements within his response briefs, Plaintiff claims he did not consent and instead responded, "You need a warrant to search my car

---

issue of fact, a mere invitation to visit does not constitute entrapment, and entrapment does not state a cause of action under § 1983. Mullinax v. McElhenney, 672 F. Supp. 1449, 1451 (N.D. Ga. 1987).

4

there." (Doc. 87-1, pp. 9, n.2; doc. 103, p. 27.)  Sgt. Pennycuff conducted a twenty-five minute search of Plaintiff's vehicle, finding medical documents, medical supplies, medication, and cannabis oil.  (See doc. 87-2, pp. 6–7; doc. 87-5, p. 12; DC 14:17–38:49.)  Plaintiff answered all questions Defendants asked regarding items found in the vehicle.  (See DC 14:17–38:49.)

After the search, dispatch informed Sgt. Pennycuff that Plaintiff's driver's license had been suspended for several months.  (Id. at 39:51–40:54.)  Sgt. Pennycuff told Plaintiff he intended to seize the items found in the truck.  (Id. at 40:55–41:32.)  When explaining why, Sgt. Pennycuff stated Plaintiff had given him permission to search the vehicle.  (Id. at 41:05–41:08.)  Plaintiff did not express any disagreement with this statement.  (See id.)  Sgt. Pennycuff told Plaintiff he was under arrest for driving on a suspended license, and Dep. Robillard handcuffed Plaintiff and escorted him to the patrol car.  (Id. at 41:49–47:20.)  After execution of search warrants for Plaintiff's home and office, Plaintiff was charged with exploitation and intimidation of an elder or disabled person, practicing medicine without a license, and driving on a suspended license.  (Doc. 87-1, p. 7.)  Ms. Johnson died on April 18, 2018, one week after the at-issue search of Plaintiff's vehicle and arrest of Plaintiff.  (Doc. 87-6.)

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

The moving party bears the burden of establishing there is no genuine dispute as to any material fact.  See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).

Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party has the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to present affirmative evidence to show a genuine issue of fact. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (emphasis and citations omitted).

## DISCUSSION

Defendants contend they are entitled to summary judgment because they had probable cause to search the truck for evidence concerning the unlicensed practice of medicine and probable cause to arrest Plaintiff for driving on a suspended license. They also invoke qualified immunity. Plaintiff argues the summary judgment motion is premature, disagrees on the merits, and states Defendants are not entitled to qualified immunity. (Doc. 92, pp. 3–12; doc. 103, pp. 29–31.) For the reasons explained below, the Court finds that the motion is not premature, that Defendants had

probable cause to search the vehicle and arrest Plaintiff, and that Defendants are entitled to qualified immunity.

I.   **The Motion for Summary Judgment Is Not Premature**

Plaintiff contends summary judgment should be denied as premature pursuant to Fed. R. Civ. P. 56(d) because Defendants have not complied with their discovery obligations.  (See docs. 103, pp. 3–14, 21–24, 31; doc. 110, pp. 10–20.)  Rule 56(d) provides as follows:  "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

Generally, "the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion." Jones v. City of Columbus, Ga., 120 F.3d 248, 253 (11th Cir. 1997).  In order to give the opposing party the "opportunity to utilize the discovery process to gain access to requested materials," a court should deny summary judgment as premature "when the party opposing the motion has been unable to obtain responses to his discovery requests."  Snook v. Tr. Co. of Ga. Bank of Savannah, 859 F.2d 865, 870 (11th Cir. 1988); see Smith v. Fla. Dep't of Corr., 713 F.3d 1059, 1064 (11th Cir. 2013) ("Summary judgment is premature when a party is not provided a reasonable opportunity to discover information essential to his opposition.").  It is entirely appropriate to grant a motion for summary judgment "after adequate time for discovery." Celotex Corp., 477 U.S. at 322; Est. of Todashev by Shibly v. United States, 815 F. App'x 446, 450 (11th Cir. 2020) (per curiam).

After carefully considering Plaintiff's argument, the Court finds no basis to defer its summary judgment ruling.  Indeed, the Court provided Plaintiff with an adequate opportunity to conduct discovery, the Court promptly ruled on every discovery motion filed by Plaintiff, and Plaintiff is solely to blame to the extent he has failed to discover facts essential to opposing the

summary judgment motion. The deadline for written discovery expired on February 8, 2021, and the deadline for fact depositions expired on March 1, 2021. (Doc. 63.) Defendants filed their motion for summary judgment on March 18, 2021, and one month later Plaintiff filed a motion to compel and a motion to extend the discovery period. (Docs. 87, 94.) On May 25, 2021, the Court denied the extension request but ordered Defendants to produce all responsive dash camera footage. (Doc. 100.) Plaintiff filed two more motions to compel, which the Court promptly denied for a number of reasons, including Plaintiff's failure to confer with Defendants, his service of ambiguous and overly broad discovery requests, and his failure to specify the manner in which Defendants' discovery responses were inadequate. (See docs. 101, 102, 107, 113.) To the extent Plaintiff is asking the Court to revisit its rulings on these discovery disputes, the Court declines to do so.

Plaintiff argues in his response briefs that Defendants failed to comply with subpoenas he served on June 7, 2021, for the purposes of taking Defendants' depositions and obtaining documents from Ms. Potter. (Doc. 110, pp. 16, 18.) Plaintiff served these subpoenas outside the discovery period, without leave of court, and never moved to compel compliance. Moreover, Plaintiff has not certified that he has undertaken any effort to confer with opposing counsel concerning these issues as required by Local Rule 26.5. The Court provided Plaintiff ample time to complete discovery, and the Court will not defer its summary judgment ruling and reopen discovery for Plaintiff to complete tasks he failed to complete within the reasonable time frame permitted by the Scheduling Order. See, e.g., Watkins v. Regions Mortg. Inc., 555 F. App'x 922, 924 (11th Cir. 2014) (per curiam) (affirming denial of requests for discovery submitted after expiration of scheduling order deadlines); Sullivan's Admin. Managers II, LLC v. Guarantee Ins. Co., Case No. CV 412-212, 2013 WL 12158619, at *1 (S.D. Ga. Apr. 25, 2013) (denying implicit motion to amend scheduling order occasioned by submission of untimely motion to compel);

Circle Grp., L.L.C. v. Se. Carpenters Reg'l Council, 836 F. Supp. 2d 1327, 1352 (N.D. Ga. 2011); see also Fed. R. Civ. P. 16(b) (requiring courts to set deadlines for discovery and allowing modification only for good cause).

**II.   Summary Judgment Is Proper Because No Reasonable Juror Could Find Defendants Lacked Probable Cause to Search Plaintiff's Truck and Arrest Him**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons [and] houses . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV.  "[P]robable cause is a flexible and fluid concept[] that looks . . . to the totality of the circumstances to determine the reasonableness of the officer's belief that a crime has been committed." Paez v. Mulvey, 915 F.3d 1276, 1286 (11th Cir. 2019).  Not intended to be a high bar, probable cause "requires [officers to show] only the 'kind of fair probability on which reasonable and prudent people, not legal technicians, [would] act.'" Kayley v. United States, 571 U.S. 320, 338 (2014) (quoting Florida v. Harris, 568 U.S. 237, 244 (2013)).  Indeed, probability, and not certainty, "is the touchstone of reasonableness under the Fourth Amendment." Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997) (quoting Hill v. California, 401 U.S. 797, 804 (1971)).

Absent consent, an officer must generally obtain a warrant based on probable cause before conducting a search.  There are, however, exceptions to that general rule. United States v. Tamari, 454 F.3d 1259, 1261 (11th Cir. 2006).  Relevant here, "the search and seizure of vehicles without a warrant is permissible when the police have probable cause to believe a vehicle contains contraband." United States v. Virden, 488 F.3d 1317, 1321 (11th Cir. 2007) (citations omitted).  Such probable cause exists when there is "a fair probability that contraband or evidence of a crime will be found." United States v. Sokolow, 490 U.S. 1, 6 (1989) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Probable cause to arrest exists when the facts and circumstances within the collective knowledge of law enforcement officers, or of which they have reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed or is committing an offense. See, e.g., Beck v. Ohio, 379 U.S. 89, 91 (1964); Hargray v. Hallandale, 57 F.3d 1560, 1571 (11th Cir. 1995); United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989); see also Illinois v. Andreas, 463 U.S. 765, 772 (1983) ("[W]here . . . law enforcement authorities are cooperating in an investigation, as here, the knowledge of one is presumed shared by all.").

### A. Defendants Had Probable Cause to Search Plaintiff's Truck

The detailed tips conveyed by Mss. Johnson and Potter and Plaintiff's candid admissions to Sgt. Pennycuff during their initial conversation[3] established probable cause to believe Plaintiff was practicing medicine without a license in violation of Georgia law and his truck contained evidence of his illegal medical practice. It is unlawful for anyone in Georgia who does not have a Georgia medical license to (1) hold oneself out as being engaged in the treatment of diseases or injuries; (2) suggest, recommend, or prescribe any form of treatment with the intention of receiving compensation; or (3) use titles such as "M.D.," "Doctor," or "Physician" indicating one is engaged in the treatment of diseases or injuries. O.C.G.A. § 43-34-22. Any such violation constitutes a felony offense. Id. at § 43-34-42(a). Mss. Johnson and Potter's allegations indicated that Plaintiff

---

[3] Plaintiff argues the initial questioning that preceded the search constitutes a Fourth Amendment violation. This aspect of Plaintiff's claim did not survive screening because approaching an individual who is already parked to ask basic questions generally does not implicate the Fourth Amendment. See doc. 36, pp. 14-15; Muehler v. Mena, 544 U.S. 93, 101 (2005) (We have "held repeatedly that mere police questioning does not constitute a seizure.") (quoting Florida v. Bostick, 501 U.S. 429, 434-35 (1991)). Notably, even if one assumed the initial encounter exceeded the scope of mere questioning and constituted a Terry stop, no reasonable juror could find Defendants lacked reasonable suspicion in light of the information Mss. Potter and Johnson indisputably provided to Sgt. Pennycuff. See Terry v. Ohio, 392 U.S. 1 (1968). Indeed, these tips were sufficient by themselves to establish probable cause, as explained in this section. See, e.g., United States v. Bruce, 977 F.3d 1112, 1118 (11th Cir. 2020), cert. denied, 141 S. Ct. 2541 (2021) (concluding 911 call justified stopping individual matching tip's description at specified location); United States v. Lindsey, 482 F.3d 1285, 1291 (11th Cir. 2007) (finding reliable tip established reasonable suspicion).

had violated O.C.G.A. § 43-34-22 in all three of these ways, and their tips were sufficient to establish probable cause.

When determining whether a tip provides probable cause to support a search, a court must consider the totality of the circumstances. Gates, 462 U.S. at 214; Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). The court should consider the "informant's 'veracity,' 'reliability,' and 'basis of knowledge'" and whether there has been "corroboration of the details of an informant's tip by independent police work." United States v. Gonzalez, 969 F.2d 999, 1003 (11th Cir. 1992) (quoting Gates 462 U.S. at 230, 242). Ms. Johnson possessed direct knowledge of the events as the victim, and her detailed account was corroborated by her status as a hospitalized cancer patient, the tip provided by Ms. Potter, and the damning admissions by Plaintiff in the opening minutes of his conversation with Sgt. Pennycuff. Indeed, Plaintiff identified himself as Jimmy Taylor, explained he was there to assist Ms. Johnson with stem cell therapy to treat her cancer, and admitted he prepared the medication to be used in the treatment and brought it with him, even showing it to Sgt. Pennycuff. Plaintiff further held himself out as a physician to Sgt. Pennycuff and, after initially lying, admitted he was not licensed in Georgia.

Plaintiff points out that, at the scene, he argued to Defendants he was not guilty of practicing medicine without a license because Ms. Johnson administered the treatment herself while he was merely present. The argument is facially invalid under O.C.G.A. § 43-34-22, which makes no such distinctions and instead broadly prohibits (1) the holding out of oneself as being engaged in medical treatment; (2) suggesting, recommending, or prescribing medical treatment with the expectation of compensation; and (3) using titles such as "Doctor" or "Physician" to indicate engagement in medical treatment.

Even if Plaintiff had advanced a technical but facially valid legal argument, it would have been insufficient to defeat probable cause. "Police officers aren't lawyers; we do not expect them

11

to resolve legal questions or to weigh the viability of most affirmative defenses." Paez, 915 F.3d at 1286.  Legal decisions such as this are best left to the prosecutors.  See United States v. Roberts, 410 F. Supp. 3d 1268, 1283 (N.D. Fla. 2019) (finding probable cause to arrest despite arrestee's legal argument he did not violate statute); Williams v. City of Albany, 936 F.2d 1256, 1260 (11th Cir. 1991) ("The officers properly deferred legal decisions to the district attorney."); see also Fridley v. Horrighs, 291 F.3d 867, 873 (6th Cir. 2002) (concluding probable cause determination does not require examination of suspect's legal defenses).  Moreover, Sgt. Pennycuff had no reason to trust or credit Plaintiff's parsing of the facts and law because, minutes before, Plaintiff admittedly lied about his licensure status in Georgia.

For these reasons, based on the undisputed facts, Defendants had probable cause to search Plaintiff's vehicle, and no reasonable juror could disagree.  See United States v. Foree, 43 F.3d 1572, 1576-77 (11th Cir. 1995) (finding confidential tip supported probable cause once corroborated); United States v. Engle, CR 406-082, 2006 WL 1980265, at *2 (S.D. Ga. July 12, 2006) (finding probable cause from three confidential tips when criminal defendant gave no reason to distrust tips).  Because Defendants plainly had probable cause to search the vehicle, the Court need not consider whether Plaintiff consented to the search.

### B.   Defendants Had Probable Cause to Arrest Plaintiff

It is undisputed that Plaintiff drove to Ms. Johnson's home in his truck, Sgt. Pennycuff observed Plaintiff arrive and park in the driveway, and at the time Plaintiff's driver's license was suspended.  Avoiding these inconvenient and undisputed facts, Plaintiff contends Defendants lacked probable cause to arrest him for driving on a suspended license because he was not driving the truck when Sgt. Pennycuff approached him.  (See doc. 92, pp. 3-4; doc. 103, pp. 29-31, 48.)  He also argues Sgt. Pennycuff's mission that day was to investigate the unlicensed practice of medicine rather than a traffic violation.  (Doc. 103, pp. 30, 48-51.)  Both arguments are meritless,

12

and no reasonable juror could find Defendants lacked probable cause to arrest Plaintiff for driving on a suspended license. See United States v. Woods, 385 F. App'x 914, 917 (11th Cir. 2010) (*per curiam*) ("Under Georgia law, a person is prohibited from driving with a suspended license.") (citing O.C.G.A. § 40–5–121(a)); Cox v. State, 550 S.E.2d 127, 128 (Ga. Ct. App. 2001) (holding officer had probable cause to arrest after seeing defendant drive into parking lot and later discovering defendant's license was revoked); see also United States v. Braddy, 11 F.4th 1298, 1310 (11th Cir. 2021) ("An officer 'may conduct certain unrelated checks during an otherwise lawful traffic stop' so long as the officer does 'not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.'") (quoting Rodriguez v. United States, 575 U.S. 348, 354-55 (2015)); State v. Chambers, 391 S.E.2d 657, 659 (Ga. Ct. App. 1990) (concluding officer did not have to wait until he had probable cause to arrest defendant for crimes under investigation when officer discovered defendant was driving without a license).

### III.   Defendants Are Entitled to Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). The doctrine "is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Hoyt v. Cooks, 672 F.3d 972, 977 (11th Cir. 2012) (quotations and citations omitted). As a result, qualified immunity "liberates government agents from the need to constantly err on the side of caution by protecting them both from liability and the other burdens of litigation, including discovery." Holmes v. Kucynda, 321

F.3d 1069, 1077 (11th Cir. 2003) (internal quotation marks omitted). But qualified immunity does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982)) (internal quotation marks and alteration omitted).

A defendant first must show that he acted within his discretionary authority. Mobley v. Palm Beach Cty. Sheriff Dep't., 783 F.3d 1347, 1352 (11th Cir. 2015). Specifically, a defendant must show that he "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). If the defendant makes this showing, the burden shifts to the plaintiff to prove (a) a violation of the Constitution by defendants, (b) the illegality of which was clearly established at the time of the incident. Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (citations omitted). The Court has discretion in deciding which of those two prongs to address first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Application of this two-step framework here requires a finding Defendants are entitled to qualified immunity. First, Plaintiff does not dispute Defendants were acting within their discretionary authority as police officers. Indeed, the undisputed facts show Defendants were performing routine police work at all relevant times. Second, Plaintiff has failed to submit evidence suggesting Defendants violated his clearly established Fourth Amendment rights. On the contrary, as explained in Discussion Section II, supra, Defendants had probable cause to search Plaintiff's vehicle while investigating the allegations of unlicensed medical practice and probable cause to arrest Plaintiff for driving on a suspended license. Even if this were not true—which, it is—Defendants would still be entitled to qualified immunity because the undisputed facts show they at least had arguable probable cause for the same reasons, which is "all that is required for

qualified immunity to be applicable to an arresting officer." Scarbrough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001) see Hardigree v. Lofton, 992 F.3d 1216, 1225 (11th Cir. 2021) ("[I]n cases involving warrantless searches or seizures, law enforcement officers will be entitled to qualified immunity if they had even 'arguable probable cause.'") (quoting Feliciano v. City of Miami Beach, 707 F.3d 1244, 1251 (11th Cir. 2013)).  Defendants are therefore entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment, (doc. 87).  The Court **DIRECTS** the Clerk of Court to enter the appropriate judgment in favor of Defendants and to **CLOSE** this case.

**SO ORDERED**, this 28th day of March, 2022.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA